WYMAN *versus* FARRAR · & al.

Exceptions or reservations in a deed of conveyance are to be construed most strictly against the grantor and most beneficially for the grantee.

F owned a water privilege and dam, by which the wheels of his tannery were worked. He deeded a part of the land, with a right to take water for machinery from his dam, reserving " sufficient water *at all times* to work" the tannery wheels, " *as now used.*" — *Held*, that the water reserved was the quantity, (and no more than the quantity,) *actually used* by the tannery at the time when the deed was given.

Though the lease of a factory, which is usually moved by a water power, should not, *in express terms*, contain a grant of the water power, such grant would result by implication of law.

Such grant, thus arising by implication, will not extend beyond the rights possessed by the lessors.

If, therefore, the water power was but a part of a larger water power, in which the lessors were co-tenants with other persons, and if the lessees should use more than their lessors' proportion of it, no right of action against the *lessors* could arise in favor of the other co-tenants, for such disproportionate use.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J. presiding.

CASE, for diverting water from plaintiff's tannery.

Jonathan Farrar owned the water power and mill privileges upon a stream in Dexter. He there built a dam and upon one shore of the stream he erected and conducted a tannery with its bark mill, fulling stocks and roller, driven by water wheels.

In 1834, he conveyed to one Baker the land opposite to the tannery upon the other shore, " *together with the privilege of drawing water from the dam on the premises, sufficient to carry a turning lathe and other necessary machinery for the chair making business and no other,*" with a wheel " in such way as not to injure the dam or in any way interfere with the bark mill," &c., " *meaning to reserve water sufficient at all times to work the bark mill, fulling stocks and roller as now used.*"

Baker erected on the premises a chair factory, which, with all the rights derived to him by the deed from Farrar, became the property of these defendants. The wheels of the factory have ever since been fed by water from the dam.

On February 26, 1845, the tannery with its water power and connected machineries, was conveyed by the heirs of Jonathan Farrar, to the plaintiff, who has ever since carried on the tanning business, having altered and improved the wheels and machinery, introducing much of saving economy in the application of the water. He has greatly enlarged the amount of the tanning business; so that he uses and needs to use the water a *larger portion of the time* than it was used, when Jonathan Farrar's deed was made to Baker.

In these operations he has suffered much loss through the want of an adequate supply of water. He ascribes that loss to the wrongful acts of the defendants, in drawing from the dam a greater portion of water than was authorized by Jonathan Farrar's deed to Baker, under which their title is held; and this suit is brought for those wrongful acts of diverting the water from the plaintiff's tannery.

On March 22, 1845, Cutler, one of these defendants, gave to Fitzgerald and Curtis an unsealed lease of the factory for three years, signing the same by the name of Farrar & Cutler, which was the name, under which the defendants conducted their partnership business in relation to that property.

Fitzgerald & Curtis occupied under that lease, using the premises, not as a chair factory, but as a machine shop, having made many changes in the wheels and gearing.

The defendants contended that no more water had been used for the machine shop than was allowed by Jonathan Farrar's deed; and they introduced evidence to show that, *prior* to the occupation by their lessees, much less water had been used by them than would have been required for a chair factory with one lathe, and they contended that, if too much water was used by the lessees, the plaintiff's action should have been brought against them, and not against these defendants.

The plaintiff contended that there was no authority in Cutler to make such a lease, and that it was therefore a nullity, and could furnish no protection to the defendants.

In order to economize the water, a reservoir dam had been made at the foot of the pond, in which that stream originated. Testimony was introduced, proving that that dam discharged $63\frac{9}{12}$ cubic feet of water, and that the spouts of the plaintiff's mill would discharge $63\frac{7}{12}$ cubic feet, per second.

The plaintiff introduced evidence to show that, from his improvements in the application of water, he actually used a less quantity than Jonathan Farrar *would have used*, if his tannery business had been so enlarged as to require the work-

ing of the wheels *at all times, in the mode* in which they were *constructed to run.*

On these facts the plaintiff contended, *that* the defendants had no right to use the water for any purpose whatever, except for the chair making business ; or, however that might be, *that* he, the plaintiff, had a right, under the terms of said reservation, to use all the water that flowed in the stream, if he needed it for his tannery, provided he took no more than could have been used by said Jonathan Farrar in running his tannery day and night with the wheels constructed as they were at the date of his deed ; *that* the plaintiff did need all the water for his tannery ; — and *that* therefore the grant to Baker of the water had become void, excepting when there was an unusual flow of water in the stream.

The defendants contended that the grant to Baker contained no limitation of the purpose for which the water should be used in his shop, but only of the quantity which might be taken ; and further that the reservation of water for the tannery restricted the plaintiff to the use of that quantity of water which said Jonathan Farrar required to carry on the business in his tannery in the mode and at the times he actually used it, and for the amount of business which he did in it, before the date of the Baker deed.

The Judge, among other things, instructed the jury *that* the plaintiff could not recover damage for any injury prior to Feb. 26, 1845, the date of the deed from the heirs of Jonathan Farrar ; *that* the restrictions of the Baker deed have reference to the *quantity* of water and not to its *use,* both in the grant and the reservation ; *that* the grant gave to Baker and his assigns the right to use, for any machinery, as much water as would be sufficient to work machinery, necessary for the turning of one lathe and for the chair making business, subject to the reservation ; *that* the reservation did not limit the grantor or his assigns to the quantity of water necessary to do the amount of business that was then or had before been done in that tannery, nor to the amount which could have been done in the mode of tanning then in use, provided the

tannery had been enlarged, nor to the amount that could have been done in the tannery as it then was by any other mode of tanning, but only to the amount of water that was *sufficient*, at the date of the Baker deed, *to use the wheels in the mode in which they were then constructed to run*, for the purposes of tanning in that yard in any mode and to any amount ; *that* the plaintiff had a right, if he needed for the purpose of his tannery, to use as much water as could have been required to work three wheels at all times, in the mode in which they were constructed to run ; *that* he could not alter the construction or mode of running so as to draw more water in a given time, than could have been drawn at the date of the deed ; *that* this doctrine must hold even though it should deprive the defendants entirely of the use of the water, but *that* if the wheels were so constructed at the time when the deed to Baker was given, that the whole could not be run together, or if the amount of water was not such as to allow three wheels or two wheels to run at the same time, without very soon exhausting the power, the plaintiff could not so alter his machinery as to take more water than was used by the grantor of that deed at its date, by changing the mode of construction, or the mode of use as designed in the construction by the grantor ; *that* the burden was upon the plaintiff to show that his rights have been invaded ; *that* he must show how much water would be required to do his work in the tannery by said mills, as they were constructed at the date of the Baker deed and in the mode in which they were then used, and that he has not exceeded that quantity ; *that,* if the defendants have drawn out the water so that they have taken a part of that quantity which belonged to the plaintiff by the reservation, they are liable, provided he has been injured thereby ; *that* the defendants, by giving the lease to Fitzgerald and Curtis, rendered themselves liable for any damage arising from the use of the water by their lessees for the purpose of working the machinery in the shop at the time of the lease, in the mode in which, by its construction, it was designed to be used, but not for working any machinery after-

wards put in, unless put in by their procurement. The verdict was for the plaintiff. To these instructions, the defendants excepted. They also filed a motion for a new trial.

*Rowe & Bartlett*, for the defendants.

*A. W. Paine*, for the plaintiff.

RICE, J. — This case comes before us on exceptions and on a motion for a new trial on the ground of newly discovered evidence.

Jonathan Farrar was the owner of the entire estate now owned by the plaintiff and defendants, concerning which the controversy has arisen. Oct. 11, 1834, said Farrar conveyed to one Baker a piece of land opposite his tannery with certain rights of water. The deed to Baker contains certain reservations for the benefit of the grantor. The defendants now represent Baker, and the plaintiff Jonathan Farrar, as he stood immediately after his deed was made to Baker. The rights of the parties mainly depend on the construction of the Baker deed. That deed conveys the land therein described " together with the privilege of drawing water from the side dam on said premises sufficient to carry a turning lathe and other necessary machinery for the chair making business, and no other," said deed also contains the following reservation — " meaning to reserve water sufficient at all times to work the bark mill, fulling stocks and roller as now used."

Upon the question whether the defendants had the right to apply the water to any other use, than that of propelling a turning lathe, &c., the Judge gave instructions which, being in favor of the defendants, are ·not made the subject of complaint.

Since the date of the Baker deed, important alterations and improvements have been made by the plaintiff in the machinery in his tannery, and the business of the establishment has been very much increased, which requires the machinery to be kept in operation more constantly than prior to that time.

The fact whether it would require more water to work the

machinery now in the tannery, than was required to work the old machinery during a given period of time, was in controversy, and upon that point there was much conflict of testimony.

The plaintiff contended, that by the provisions in the Baker deed, he was authorized to use as much water as was sufficient to work the bark mill, fulling stocks and roller, all the time, in the condition that the mill and machinery was at the date of that deed. The defendant contended, that the true construction of that deed, was, that the plaintiff should be entitled to so much water only as was actually used for propelling the different pieces of machinery in his mill at the time above specified.

Upon this point the Judge instructed the jury, "that the reservation did not limit the grantor or his assigns to the quantity of water necessary to do the amount of business that was then or had before been done in that tannery, nor to the amount which could have been done in the mode of tanning then in use, provided the tannery had been enlarged, nor to the amount that could have been done in the tannery as it then was by any other mode of tanning, but only to the amount of water that was sufficient, at the date of the Baker deed, to use the wheels in the mode in which they were constructed to run, for the purpose of tanning in that yard, in any mode, and to any amount; that the plaintiff had a right, if he needed for the purpose of his tannery, to as much water as could have been required to work three wheels at all times, in the mode in which they were constructed to run; that he could not alter the construction or mode of running so as to draw more water in a given time, than could have been drawn at the date of the deed. That this doctrine must hold even though it should deprive the defendants entirely of the use of the water," &c.

The instruction is explicit and could not by possibility have been misunderstood by the jury.

The case finds that the gates at the pond or reservoir dam were so constructed as to vent sixty-three and nine-twelfths

cubic feet of water per second, and that the spouts of the plaintiff's mill would vent sixty-three and seven-twelfths cubic feet, being, within an immaterial fraction, all the water that could pass the gates at the foot of the pond.

The plaintiff contended and introduced evidence to prove, that he had so altered the spouts, wheels and geering of his mill, that he actually used less water than said Jonathan Farrar would have used, had he extended the business of his tannery so as to require his wheels to be worked at all times, in the mode in which they were constructed to run.

The deed to Baker purports to grant rights of water to be applied to actual and beneficial use. The parties must be presumed to have intended to transfer something by that deed. It can hardly be presumed that a person purchasing a privilege on which to establish a manufacturing business for the successful prosecution of which a constant water power was essential, would consent to the insertion of a reservation in his deed which would effectually negative the terms of his grant.

It is however manifest, that it was the intention of the grantor to put some restrictions upon his grant to Baker. What was the extent of those restrictions? What is the standard by which the rights of the parties are to be measured?

Every exception or reservation in a deed is the act of the grantor and should therefore be construed most strictly against him and most beneficially for the grantee. 10 Coke, 106, b ; Com. Dig. Tit. Foil. E. 8 ; *Case* v. *Hoight,* 3 Wend. 632.

The Judge, in his instructions to the jury, construed the words, *as now used,* as being equivalent to the words, *as now constructed to run.* According to this construction the reservation would read, " meaning to reserve water sufficient at all times to work the bark mill, fulling stocks, and roller *as now constructed to run,*" thus making the capacity of the mill to vent water the standard by which to determine the rights of the parties, rather than the amount of water then actually used. Had the words of the reservation been " *now in use,*" instead of " *as now used,*" this construction would seem to have been correct. But we think the obvious meaning of the

language shows, that the rights of the parties are to be determined by the quantity of water then actually used by the mill and not by its capacity to use water, and that such must have been the intention of the parties cannot well be doubted, when we consider that the other construction would render the grant of little or no value. If, however, there is doubt as to the true construction of the language in the reservation, the general rule above referred to requires, that the construction be given which is most favorable to the grantee.

The instruction "that the defendants by giving the lease to Fitzgerald and Curtis, rendered themselves liable for any damage arising from the use of the water by the lessees for the purpose of working the machinery in the shop at the time of the lease, in the mode in which, by its construction, it was designed to be used, but not for working any machinery afterwards put in, unless by their procurement," is also objected to by defendants.

The lease to Fitzgerald and Curtis gives no right to use any water by express terms. It does however, by implication, convey the right to the use of the water necessary to the enjoyment of the premises leased, so far as that right existed in the lessors. *Rackly* v. *Sprague*, 17 Maine, 281; *Hathorn* v. *Stinson*, 10 Maine, 224.

This right to the use of water, being obtained only by implication of law, could not be extended beyond the rights possessed by the lessors.

The fact that the lessors were not authorized to draw water sufficient to propel all the machinery they had in their shop at the same time would not change this result if such fact were found to exist.

From the view we have taken of this case, the question whether Cutler had authority to lease the premises does not become material. Nor is it necessary for us to consider the motion for a new trial.     *Exceptions are sustained and a new trial granted.*

SHEPLEY, C. J., and WELLS and APPLETON, J. J., concurred.
HATHAWAY, J., concurred in the result.