NEW-YORK,
May, 1814.

JACKSON
v.
LAWRENCE.

## Jackson, *ex dem.* Snyder and Snyder, *against* Lawrence.

THIS was an action of ejectment brought to recover the un-
divided half of the mill seats and mills, situate in lot No. 117. in
the *Scoharie* patent. The cause was tried at the *Scoharie* cir-
cuit, in *September*, 1813, before Mr. Justice *Yates*; and a ver-
dict was taken for the plaintiff, subject to the opinion of the
court on a case.

The plaintiff gave in evidence a deed of partition, dated 18th
*March*, 1808, between *Peter Vroman* and *Jacob Snyder*, which
recited certain lots in the *Scoharie* patent, held by them in com-
mon, and, among others, lot No. 117. which, with others, *Vroman*
released to *Snyder*. The partition deed contained the follow-
ing clause : " Always excepted out of this indenture of parti-
tion, all places which may be found convenient for erecting
mill or mills on *Foxe's* kill, and on any of the lots and pieces
of land hereby divided, which shall remain in common among
the said *Jacob Snyder* and *Peter Vroman*, and their heirs and
assigns forever." And it was agreed that each party was to
have a free road across the other's land, where it might be
wanted, &c.

It was proved that the defendant was in possession of 50

*Where a partition deed contained an exception of all places which may be found convenient for erecting mills on a certain creek, &c. It was held to mean only natural mill seats, or falls in the creek, and not places where mills might be erected and supplied with water by means of sluices, or other works of art.*

acres, part of lot No. 117. and that he admitted to the witness that he claimed title from *Peter Vroman* by sundry mesne conveyances; that he had erected on the said lot a saw mill, an oil mill, a fulling mill, and a carding machine, about six years ago; that the lessors of the plaintiff were the sons and heirs at law of *Jacob Snyder.* The witness testified that he never considered the premises in question as containing a mill seat, until after the defendant purchased, in 1804; that the water supplying the mills erected by the defendant was taken from *Foxe's* creek, and conducted by a sluice to the distance of forty rods, to the fulling mill and oil mill; that the saw mill was near the dam at the creek side, and the water was conveyed to it from the sluice.

Another witness testified that the defendant, and the persons through whom he derived title, had been in the quiet possession of the premises since 1789; the witness never considered the premises as containing a *mill seat;* and that there was no natural mill seat on the premises; that the water which carried the mills had been obtained at great expense, by means of a sluice, from the creek, &c. and that when the mills were erecting, several persons, and *Snyder* among the rest, said it was a foolish undertaking on the part of the defendant.

The case was submitted to the court without argument.

*Per Curiam.* According to the true construction of this exception, it applies to a *natural,* as contradistinguished from an *artificial,* mill seat. From the uncontradicted testimony of *Josias Clark,* it appears that there was no *natural* mill seat on the premises in question. The water of *Foxe's* creek had been diverted by the defendant, at a great expense, so as to create, as it were, a place where mills can be erected and put in motion on lot No. 117. This is not that kind of mill seat which comes within the obvious and reasonable meaning of the exception in the deed. There are other grounds upon which the defendant would be entitled to judgment, but the one mentioned appears to be so entirely free from doubt, that it is unnecessary for the court to go any further.

Judgment for the defendant.