SALTZSIEDER v. SALTZSIEDER et al.   (No. 7233.)

(Supreme Court, Appellate Division, First Department.   May 7, 1915.)

1. DEEDS ⬪⇒108—DELIVERY AFTER DEATH OF GRANTOR—SUFFICIENCY.
    Where decedent executed a deed of land to his sons and delivered it to his attorney, with directions that it be delivered to the sons upon his death, not intending that his control over the property should cease until then, title passed when the deed was delivered in accordance with the direction.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 294–308;   Dec. Dig. ⬪⇒108.]

2. DEEDS ⬪⇒208—DELIVERY—AGENCY OF RECIPIENT FOR GRANTEES—SUFFICIENCY OF EVIDENCE.
    In an action to declare void a deed, evidence *held* insufficient to justify finding that there had been no delivery by the grantor to his attorney as agent for his sons, the grantees.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632;. Dec. Dig. ⬪⇒208.]

3. DEEDS ⬪⇒208—DELIVERY—RETENTION OF CONTROL BY GRANTOR—SUFFICIENCY OF EVIDENCE.
    In an action to declare void a deed, evidence *held* insufficient to support finding that the grantor delivered it to his attorney to be held subject to the grantor's control.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632; Dec. Dig. ⬪⇒208.]

4. WILLS &⟶88—DEED OR TESTAMENTARY DISPOSITION—SIMULTANEOUS EXE-
   CUTION OF WILL—EFFECT.
     Previous to his remarriage, decedent executed a deed to his sons and
   delivered it to his attorney, with directions that it be given to such sons
   on his death. He also, by will executed at the same time, left to his sons
   the remainder of his property, except that he bequeathed $25,000 to his
   prospective wife, in lieu of her dower interest, and also made provision
   for any issue of the marriage. *Held*, that the execution of the will simul-
   taneously with the deed did not render such deed a part of the testa-
   mentary disposition, and did not tend to show that grantor reserved
   power of control over the deed, since it accomplished a result independ-
   ent of that worked by the will, and operated upon different portions of
   testator's property.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec.
   Dig. &⟶88.]

Appeal from Special Term, New York County.

Action by Irma Saltzsieder against Marie Saltzsieder and others,
who impleaded Frederick W. Saltzsieder and others. Judgment for
plaintiff, and the impleaded defendants appeal. Reversed, and judg-
ment directed in favor of appellants.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOW-
LING, and HOTCHKISS, JJ.

Leo C. Weiler, of New York City, for appellants.

Robert E. Deyo, of New York City, for plaintiff respondent Irma
Saltzsieder.

Henry L. Scheuerman, of New York City, for respondent Marie
Saltzsieder.

DOWLING, J. Appeal from a judgment declaring void, and direct-
ing the cancellation of record of, a certain deed made by Frederick W.
Saltzsieder to Frederick W. Saltzsieder, Jr., Walter H. Saltzsieder,
and Herbert G. Saltzsieder, dated May 21, 1898, and conveying prem-
ises at the northeasterly corner of Twenty-Fourth street and Fourth
avenue in the city of New York, in consideration of "love and affec-
tion and the sum of one dollar, lawful money of the United States."
The grantees in this instrument were the grantor's sons, then all mi-
nors. Frederick W. Saltzsieder, on May 21, 1898, was engaged in
the grocery business in this city. He was a widower, with the three
sons enumerated, and was about to marry Marie Schneider, whom he
actually married on the 26th of the same month. On the first-named
date he executed the deed in question in the presence of his attorney,
William C. Timm, who had drawn it for him, and who took his ac-
knowledgment thereto. At the same time he executed his last will and
testament, drawn by the same attorney, whereby he bequeathed to his
prospective wife, Marie Schneider, in case she should become his wife,
the sum of $25,000, to be received and accepted by her in lieu of dower,
and all the rest of his property was left to his three sons equally, with
a proviso that, if any child or children should thereafter be born to
him, said child or children should receive a share equal to one-half of
what each of his sons should receive. After execution, Saltzsieder
delivered the deed and will to his attorney, Timm. The latter's tes-

timony as to what then transpired, so far as he was allowed to give it, is as follows:

"After he [Saltzsieder] had signed the paper [the deed], he handed it to me, and told me that I should hold it until his death. * * * He said to hold it until his death and hand it over to his sons, the three boys. * * * Q. Did Mr. Saltzsieder say anything to you with respect to the deed—that he should get it back again; that he might recall it from you? A. He didn't say anything."

Timm then went with Saltzsieder to a directors' meeting, the former having possession of the papers, which he took with him to his home that night, and next morning brought them down to his own office, put them in one envelope, and kept them there until he read of Saltzsieder's death, when he called up the eldest son on the telephone and finally delivered the deed and will to him. Saltzsieder died March 13, 1913. Meantime, after the delivery of the papers to Timm, the second marriage of Saltzsieder, and the birth of a child on May 10, 1899, Saltzsieder continued in possession of the premises conveyed by the deed and dealt with them as his own. In April, 1902, he executed a new will, the contents of which are unknown, and which was revoked by a still later will. On December 29, 1903, he executed a mortgage on the premises for $25,000, and from the proceeds of that loan the existing mortgage of $15,000 appears to have been paid off. On May 3, 1911, he executed an additional mortgage for $15,000. In both of these his wife joined, and on closing both of these loans he made the customary affidavits of title. On October 18, 1911, he made a new will, whereby one-third of the net income from his estate was left to his wife, one-tenth to his oldest son, and the balance was divided equally between his two other sons and his daughter. During his lifetime Saltzsieder had made some six leases of the property in question, covering the period from 1898 to 1917, and also paid the taxes, interest, and repairs, and collected and appropriated the rents. When he died he left him surviving his widow, three sons by his first marriage, and a daughter by his second marriage.

[1-3] The respondents contend that the will and deed executed on May 21, 1898, must be considered as one instrument, revoked by the birth of the plaintiff and by the making of the subsequent wills, that there was never any valid delivery of the deed, putting it beyond the grantor's power to revoke or reclaim it; and that decedent retained control of the deed through the simultaneous execution of the will. We do not find any force in these contentions. The deed in question was delivered to Timm by Saltzsieder, to be delivered to the grantees after the grantor's death, without any reservation whatsoever of control over the deed, and this was sufficient to pass title to the grantees when so delivered to them by Timm. The fact that Saltzsieder retained control over the property during his lifetime does not impair the effect of the deed, for he never intended his control to cease until his death, when title was to vest in his sons. In Stonehill v. Hastings, 202 N. Y. 115, 94 N. E. 1068, Margaretta Todd, the owner of the premises there in question, executed a deed of the same to her daughter, Rosalie, in consideration of natural love and affection, and delivered the same to one Lockwood, "with instructions to hold the same during the lifetime of

the grantor, and upon or after the death of the said Margaretta Todd to deliver the said deed of the said premises to her daughter." Lockwood did hold the deed during the grantor's lifetime, and delivered it after her death to her daughter. In that case the owner had likewise "retained the active and undisputed control, possession, management, and ownership of the said premises down to the date of her death." The only differentiation between the cases seems to be that there was no proof of any mortgaging of the premises by the owner, which has no bearing on the question of the validity of the deed, which was not to take effect until the owner's death; the execution of a will at the same time as the deed, neither instrument however containing any reference to the other; and that in the Stonehill Case the court refused to find that the deed was deposited with Lockwood by the grantor as her agent, or that she at all times retained control of the aforesaid deed and exercised over it the power to recall it. The court in the case at bar made findings that "there was no delivery of the said deed by the decedent to Mr. Timm as agent of the grantee," and that "decedent at all times retained control of said alleged deed deposited as aforesaid with Mr. Timm"; but these findings are not only without evidence of any kind to support them, but are absolutely opposed to the evidence. There is therefore no material difference between the Stonehill Case and the case at bar. In the former Judge Hiscock said (202 N. Y. 120, 94 N. E. 1069):

"The conclusion that the title vested in the grantee from the time of the death of her grantor was part of the conclusion of law made for the purpose of fixing the time from which the grantee should receive the rents and profits, and I do not understand that there is any dispute that she was properly limited in her right to these to the period after her grantor's death. The other conclusions, that the deed was to take effect upon the death of the grantor, and that the latter died seised of the premises, are in accordance with the fact of the final delivery of the deed and the law as established by well-considered cases. Hathaway v. Payne, 34 N. Y. 92, considered a deed like the present one, which was delivered by the grantor to a third party, to be delivered to the grantee after the former's death. Chief Judge Denio wrote for a majority of the court as follows: 'They [the authorities] do * * * prove that a deed may be delivered to a third person, as this was, with instructions to be finally delivered to the grantee after the death of the grantor. In such a case, the weight of authority is that no title passes until the final delivery, and that then and thereafter the title is, by relation, deemed to have vested as of the time of the first delivery to the third person. If it were an original question, I should suppose that such a transaction was of a testamentary character. * * * But the cases establish the rule as I have stated, and they should not now be disturbed.' The same doctrine was laid down in Rosseau v. Bleau, 131 N. Y. 177 [30 N. E. 52, 27 Am. St. Rep. 578]. It was there held that an action might not be maintained by the representative of a deceased person to set aside as fraudulent as against creditors a deed not delivered until after the latter's death, for the reason that such a deed did not become operative during life, and that therefore the grantor died so seised that the liens of creditors attached under the statutes relating to the real estate of a deceased person."

[4] In the case at bar there is no reason to hold that the execution of the will, simultaneously with the deed, constituted a part of the same testamentary disposition, or tended to prove a reserve power of control over the deed, nor are there any facts proven justifying such a presumption. The deed accomplished a result quite independent of

that worked by the will, and operated upon different portions of testator's property. The instructions given in regard to the delivery of the deed made that transaction complete in itself, disconnected from any association with the testamentary disposition of Saltzsieder's property, and operated at once to create a title in the sons which was to become effective upon his death. Neither his control over the property itself, during his lifetime, nor his execution of subsequent wills, nor the birth of a child thereafter, could defeat the title thus created.

The judgment appealed from will therefore be reversed, with costs, and judgment directed in favor of appellants. The following findings of fact are reversed: Seventh, ninth, twentieth, and twenty-second; also so much of the third finding as finds that Frederick W. Saltzsieder executed the deed in question in anticipation of his marriage with Marie Saltzsieder; also so much of the fifth finding as finds that Frederick W. Saltzsieder executed the deed in question upon the advice of William C. Timm; also so much of the thirteenth finding as finds that Marie Saltzsieder joined in the execution of the mortgage referred to, to release her inchoate right of dower in the said lot to the extent of said mortgage; also so much of the fourteenth finding as finds that the defendant Marie Saltzsieder joined in the execution of the mortgage therein referred to, to release her inchoate right of dower to the extent of the said mortgage; also so much of the fifteenth finding as finds that Frederick W. Saltzsieder made the affidavits referred to, in connection with each of the mortgages set forth in the thirteenth and fourteenth findings of fact, to induce the mortgagee to advance the money secured by said mortgages—said findings and parts of findings being reversed as without any evidence to support them. All the conclusions of law numbered I to XVI, inclusive, are reversed as unwarranted. The twenty-seventh finding of fact is amended, by adding after the words "that the said William C. Timm, having received said instrument," the following: "As set forth in the twenty-sixth finding." The following findings of fact requested by appellants are found, 7, 9, 10; and also the following conclusions of law as requested by them, 1, 2, 3, and 4. All concur.