NEPONSIT REALTY COMPANY, Plaintiff, *v.* JOHN C. JUDGE and HELEN C. JUDGE, Defendants.

(Supreme Court, Queens Special Term, March, 1919.)

Specific performance — when plaintiff entitled to judgment of — contracts for sale of real estate — evidence — pleading — vendor and purchaser.

> Where by the terms of a written contract for the sale of four certain lots the vendor did not agree to anything concerning a bulkhead surrounding the land and the answer in an action for specific performance pleads neither fraud nor mistake, parol evidence that plaintiff agreed to repair the bulkhead is inadmissible.

> Under such a contract the vendor is deemed in equity to be the trustee of the title for the vendee and he, the trustee of the vendor for the purchase money, and the interest of the vendee in the contract is real estate, and where the evidence shows that the washing away of part of the rear of two of the lots immediately adjacent to a bay was not caused by any fault or neglect of the plaintiff and that the other lots remain in substantially the same condition as when the contract was made, the vendee must bear the loss arising from depreciation in value and other disadvantages *res periit domino,* and plaintiff is entitled to judgment.

> Where the contract specifically provided that an annual charge of four dollars a lot should be paid and devoted to the maintenance of roads, paths, parks, etc., as the vendor should determine, a contention that such charge was for use in maintaining the bulkhead is untenable.

ACTION for specific performance.

Owens, Gray & Tomlin (James M. Gray, of counsel), for plaintiff.

John C. Judge, for defendants.

FABER, J. This is an action for specific performance. Plaintiff and defendant John C. Judge entered

into a written contract, dated August 25, 1914, for the sale of certain filled-in real estate at Neponsit, L. I., consisting of four lots, for the sum of $1,900, to be paid in installments. After making payments pursuant to the terms of such contract for about one year, the defendant John C. Judge, on October 15, 1915, with the consent of the plaintiff, assigned the same to the defendant Helen C. Judge, who continued to make the payments required by said contract down to about June 1, 1917, when $1,054 had been paid. Then she refused to make further payments, claiming the contract was broken, as part of the property had been washed away " because of the plaintiff's willful neglect to repair the bulkhead surrounding said land, which it agreed with the defendant to do, so as to preserve said land in order to deliver same to defendant, and it agreed to keep said bulkhead in good repair." There is no provision in the written contract by which plaintiff agreed to anything concerning the bulkhead, but defendants claim such an agreement was made orally prior to the execution of the written contract.

No fraud or mistake is set up in the answers of the defendants, nor did they at the trial claim any fraud or mistake, and the written contract being complete and not ambiguous, defendants cannot modify or contradict said written contract by parol evidence (*Thomas* v. *Scutt,* 127 N. Y. 133), and the evidence offered by defendants, under the pleading of the defendant Helen C. Judge, that plaintiff agreed to repair the bulkhead, should have been excluded. But conceding that it was properly admitted, plaintiff's agents deny such oral agreement, and the defendants, upon whom the burden rests, have not sustained their contention as to such oral agreement, especially in view of the fact that the vendee named in the contract

is a lawyer, and is presumed to have had incorporated in the contract the whole of the agreement made by him with the vendor. Aside from the alleged agreement as to repairing the bulkhead, defendants claim the plaintiff is not entitled to specific performance because it is unable to '' now convey the land which it contracted to sell, because said land no longer exists.''

The evidence shows that two of the lots in question are immediately adjacent to Jamaica bay, and that part of the rear of such lots has washed away into the bay, and that the other two lots remain in substantially the same condition as when the contract of sale was made. The washing away of part of the two lots was not caused by any fault or neglect of the plaintiff.

The general rule is that the vendee in a contract for the sale of land is entitled to any benefits or improvements happening to the land after the date of the contract, and must bear any losses by fire or otherwise which occur without the fault of the vendor. *Clinton* v. *Hope Ins. Co.,* 45 N. Y. 465. In the case of a contract for the purchase and sale of real property, as in this case, the vendor is deemed in equity to be the trustee for the vendee of the title, and the vendee is the trustee of the vendor for the purchase money, and that the interest of the vendee is real estate, and in the case of her death descends to her heirs and is devisable as real estate. The interest of the parties in the property is changed by the contract of sale. *Hathaway* v. *Payne,* 34 N. Y. 92, 103; *Williams* v. *Haddock,* 145 id. 144, 150. Judge Gray, writing for the Court of Appeals in *Sewall* v. *Underhill,* 197 N. Y. 172, says: '' I am unable to find that the authority of the English rule has been shaken in this state, that a loss by fire, or other accident, not due to the fault of the vendor, must fall upon the vendee, when the title is satisfactory and the contract is, therefore, capable of being

specifically performed by the vendor.   (See Pomeroy's
Eq. Jur. vol. 6, sec. 859.)   While at law the legal title
may be said to be unaffected by the contract, a court
of equity regards that which is agreed to be done
as actually performed."'   Judge Haight, writing for
the same court, in *Goldman* v. *Rosenberg,* 116 N. Y.
85, says: '' It will be observed that, under the authori-
ties to which we have referred, the question as to who
shall sustain the loss depends largely upon the deter-
mination of the question of ownership, and this rule
is expressly recognized by Pomeroy in his work on
Specific Performance, at section 322, cited by the
respondent, in which he states that ' The effect of events
occurring after the point of time which fixes the
interest of the parties is wholly different from that
of prior events.   At that period, although the contract
is executory in form and is treated as wholly executory
at law, the equitable beneficial estate in the subject
matter passes to the purchaser, and he becomes, in
contemplation of equity, the real owner.   He, there-
fore, takes the benefit of all subsequent improvements.
increases, gains, rises in value and other advantages
happening to the property.   On the other hand, the
subject matter is at his risk and he must bear all
losses, total or partial, from fire or other accidental
causes or from trespassers and all depreciations in
value and other disadvantages *res periit domino*.   But
the latter proposition is subject to the most important
modification, namely, that the loss or depreciation
does not happen from the neglect, default or unwar--
rantable delay of the vendor in carrying out the con-
tract.' ''   In the case at bar no neglect, default or
delay was caused by the plaintiff vendor.  Assuming
that the defendants' contention is correct that plaintiff
agreed, and I do not so find, that it would maintain
the bulkhead, and failed to do so, that is not the

neglect, default or delay contemplated by the rule of law stated. The plaintiff owed no duty to the defendants to guard against the decay caused by time and ordinary use. *Hellreigel* v. *Manning,* 97 N. Y. 56. The cases cited by defendants' counsel with reference to dimensions of land not being the same as contracted for have, it seems to me, no application to this case. It is well settled that where a contract describes the property to be sold as containing a certain area and a survey shows less, the vendee cannot be compelled to take title without at least making some reduction in the purchase price (cases cited by defendants' counsel). No such condition exists in the case at bar. Here we have lots laid out on a map and such lots have the same dimensions as shown on the map, but do not, concededly, contain as much soil, or sand, as when the contract of sale was made. Had they contained more sand or soil, surely the defendants would not complain.

Defendants' contention that the annual charge of four dollars per lot provided for in the contract was for use in maintaining the bulkhead is untenable. Indeed, the contract specifically states that " such charge shall be payable  *  *  * and devoted to the maintenance of the roads, paths, parks, beach, sewers and such other public purposes as shall from time to time be determined by the party of the first part.  *  *  *."

Judgment for the plaintiff, with costs.