## Case and Harwood, appellants, and Haight and Arthur, respondents.

Where a party owns land adjoining one side of a stream, and also owns the bed of the stream, and conveys to another owning land adjoining the stream on the other side thereof the land under water to the middle of the stream, *reserving* to himself the right to butt a dam on both sides or shores of the stream as he shall think necessary, the parties are entitled to an equal participation in the use of the water, notwithstanding the reservation.

The *reservation* in such case has not the effect of an *exception*, it being indispensable to a good exception that the thing excepted should be part of the *thing granted*, and not of any other thing; the reservation, however, is operative as an *implied covenant* or by way of *estoppel*, securing the right provided for in the reservation.

Where there is an unlawful diversion of a stream of water from the mills and hydraulic works of a party, it is a proper case for the allowance of a preliminary *injunction*, as the injury, if persisted in, might be irreparable.

Appeal from chancery. General Philip Schuyler, by letters patent, bearing date the 22d September, 1789, had granted to him the lower falls in the outlet of Lake George, and a small strip of land adjoining the same on the south side of the outlet. The grant included the bed of the river for a considerable distance both above and below the falls, and the premises granted were bounded by the *north side of the waters* of the outlet. On the 5th July, 1793, General Schuyler, by deed, for the consideration of *five pounds*, granted unto Samuel Deal, Peter Deal and Jane Nicoll, in fee, all the land under the water of the outlet, from the north shore thereof to the middle of the stream, extending the whole distance from the western to the eastern boundary of his tract. In this deed the grantees were acknowledged to be the own-

ALBANY,
Dec. 1829.

Case
v.
Haight.

ers of the *north* shore of the outlet, and in it was contained a reservation in these words: "saving and reserving nevertheless to the said party of the first part, his heirs and assigns, the right to butt any dam or dams *on both sides or shores* of the said river or waters, as he or they may think necessary. The grant was also made subject to an unexpired term of a lease to one George Trimble, for 21 years from the 1st May, 1788. The deed also contained a covenant on the part of the grantor, that it should be lawful for the parties of the second part, their heirs and assigns, at any time or times forever after the expiration of the lease to Trimble, to butt any dam or dams on both the sides or shores of the said river or waters which they might think necessary; which dam or dams, and the river or waters therein, might nevertheless be used and occupied by the said party of the first part, his heirs or assigns, on paying such proportion of the expense and charges of erecting such dam or dams, and keeping the same in repair, as should be adequate to such use and occupation.

Trimble, the lessee of general Schuyler, constructed a dam across the outlet, butting it on both shores, and erected mills on the south shore, of which dam and mills he and those claiming under him remained in possession until the 1st May, 1809, the time of the expiration of his lease. After 1809, the proprietors of the property on the north shore used the waters of the outlet for the purpose of carrying on various hydraulic operations, obtaining their supply of water from the dam originally constructed by Trimble, and the owners of the property on the south shore using the water for like purposes from the same source. This dam is near the head of the falls, crossing the outlet in a north-east direction, the outlet here bending to the north, whilst below the falls it runs in nearly an eastern course. Near the centre of the outlet there is an island with which the dam on each side is connected. The channel of the outlet at the place where the dam was originally constructed, and where it has been continued, is on the *north* side of the outlet.

In December, 1826, the respondents who have become possessed of the title formerly vested in S. & P. Deal and J. Nicoll, filed their bill in chancery, stating that Case, one of

Case
v.
Haight.

the appellants, for the joint benefit of himself and the other appellant, had recently erected a dam across the outlet in an oblique direction from the island near the centre of the outlet to the north bank of the outlet; that the dam was not then completed as to retain and confine the waters of the outlet, but the respondents alleged their belief that when the same should be completed so as to resist and confine the waters, it would entirely and absolutely divert the waters from the mills and other hydraulic works of the respondents on the northerly side of the outlet, to the entire destruction of the value of the mills and other hydraulic works, and to the irreparable injury of the respondents. The bill prayed an injunction restraining the appellants from proceeding in the construction of the dam, and for general relief. An injunction issued according to the prayer of the bill.

In the answer of the appellants, in whom the title of Gen. Schuyler to the premises in question is vested, it was admitted that if they, the appellants, had been permitted to complete the new dam in the manner contemplated, so as to resist and confine the waters, it would have diverted much of the waters from the mills and hydraulic works of the respondents, but would not have diverted the whole of the waters, nor involved the entire destruction of the mills and hydraulic works of the respondents; and the *right* of constructing such dam was insisted on, as reserved in the deed from General Schuyler to the Deals and Mrs. Nicoll.

The appellants contended that they were entitled to have their mills supplied with water in preference to the mills of the respondents, and that they had the right to erect such dams, butting on the north shore of the outlet, as might be necessary to secure such supply. On the coming in of the answer, a motion was made for the dissolution of the injunction, which was denied by the chancellor. (See his opinion, 1 Paige's Ch. R. 447.) From the order denying the motion the defendants below appealed to this court. The appeal was argued by

*H. Bleecker,* for the appellants.

*J. V. Henry,* for the respondents.

The following opinion was delivered by

Mr. Justice SUTHERLAND. The complainants below (the respondents here) represent the *grantees*, and the appellants represent the *grantor* of the deed from General Schuyler to S. & P. Deal and J. Nicoll; and the question is whether, according to the just construction and legal operation of that deed, General Schuyler had a right to divert the whole of the stream from its natural channel on the north to the south shore, whenever the whole of the water became necessary for his mills and other hydraulic works. The decree of the chancellor affirms he had not.

It will be perceived that previous to the execution of this deed, neither of the parties could erect a dam extending from shore to shore. General Schuyler owned the south, and Deals and Nicoll the north bank of the stream; neither had a right to butt upon the land of the other, and the principle object of the conveyance seems to have been to obviate this difficulty, and to put it in the power of each to dam across the stream; and accordingly one half of the bed of the stream is conveyed. If the deed had stopped here, there can be no doubt that there would have been a perfect equality of right between the parties; each would have owned one of the banks and one half of the bed of the stream, with a right to an equal participation in the use of the water, according to the principals of the common law, (Ex parte Jennings, 6 Cowen, 518,) but neither would have acquired the right to butt a dam against the opposite shore. To accomplish this object, General Schuyler *saves* or *reserves* to himself a right to butt a dam or dams on both sides or shores of the river, and expressly covenants that the grantees shall also have the same right. The covenant and the exception are in precisely the same terms.

The reservation can have no effect as an exception. An exception is something reserved by the grantor out of that which he has before granted. It is indispensable to a good exception that the thing excepted should be part of the thing previously granted, and not of any other thing. (3 Cruise's Dig. tit. 32, ch. 3, sect. 48, 49. Shep. Touch. 77. Comyn's Dig. Fait. E. 5, 6, 7, 8. Croke. Eliz. 6. Coke's Litt. 47, a. 147, a.) The deed of General Schuyler did not convey

or profess to convey any part of the north shore; he could not therefore reserve a right to build a dam against it. But though void as an exception, the reservation is binding upon the grantees and their assigns, and becomes operative either as an implied covenant or by way of estoppel.

The deed is to be construed as though the parties had mutually covenanted that each should have a right to butt a dam upon the shore of the other; and, considered in this point of view, I see no ground for contending that it was the intention of the parties that the grantor should have a greater right in the use of the water than the grantees.

Nor is such a conclusion to be drawn from the reservation by the grantor of a right to use the water from the dam or dams which might be erected by the grantees, upon his paying such proportion of the expense and charges of erecting such dam or dams as shall be adequate to such use. Suppose the grantees had expressly covenanted that the grantor should have a right to use the water from their dam, upon paying a reasonable proportion of its cost; it certainly would not be a rational construction of such a covenant, that the covenantee should have a right to take the *whole* of the water, whenever he thought proper to pay the whole expense of the dam, or two thirds or three fourths of it, as his caprice or convenience might dictate; and a more liberal construction cannot be given to an implied covenant, or a reservation, made by the grantor in his own deed. Every exception or reservation is the act of the grantor, and shall therefore be construed most strictly against him, and most beneficially for the grantee. (2 Saund. 166, 368. 10 Coke, 106, b. Com. Dig. Tit. Fait. E. 8.) It appears to me to have been the virtual intention of the parties to establish an *equality* of right in the use of this water; and such in my opinion is the legal construction and effect of the conveyance in question.

It is not denied that the effect of the dam in question when completed will be to divert a large proportion of the water from the mills of the respondents; nor is it denied that it is the intention of the appellants, if not restrained, to complete the dam; it was therefore a proper case for a preliminary

injunction, as the injury might be irreparable. (1 Brown's C. R. 583. 2 Cox. Cas. 4. 10 Ves. 193. 2 Johns. Ch. R. 164, 272. 3 id. 282. 5 id. 101. 6 id. 439. Eden on Inj. 164, note 7, b.) And the defendants having failed to establish their title by their answer, the motion to dissolve the injunction was properly denied. I am therefore of opinion that the decree below ought to be affirmed.

Mr. Senator S. ALLEN also delivered an opinion in affirmance of the order appealed from.

This being the opinion of all the members of the court, only one senator dissenting, it was thereupon ordered, adjudged and decreed that the order of the chancellor refusing to dissolve the injunction be affirmed.