FRED F. FRENCH INVESTING COMPANY, INC., Plaintiff, v. WILLIAM E. JETTER et al., Defendants. — Submission of a controversy upon an agreed statement of facts. The plaintiff is the owner in fee of certain shore front property described in Exhibit 4. Defendants are the owners and a mortgagee of land situated nearby. The controversy is as to whether or not defendants are possessed of easements entitling them to the use of the shore front land. Judgment directed for plaintiff, without costs, as demanded in the submission, against all defendants except those interested in lots numbers 36, 38, 40, 42, 44, 46, 48 and 60. As to the last-mentioned defendants, the submission is dismissed, without costs, on the ground that the stipulated facts in relation to the conveyances are insufficient upon which to make. a determination. In respect of lots numbers 37, 41, 49, 53, 54, 56, 65, 68, 69, 70, 72 and 73, the easements were granted by conveyances from the common grantor, but continuance of the rights thereunder was conditional. The conditions were not fulfilled and the easements were extinguished. In respect of lots numbers 35, 39, 43, 45, 47, 51, 52, 55, 57, 58, 59, 61, 62, 63, 64, 67, 71 and 74, the conveyances which purport to grant easements were executed and delivered after the grantor had parted with title to the fee and had no estate in the shore front property. The agreement between several defendants and the common grantor modifying the conditions of the easements was ineffectual and not binding on the plaintiff, in view of the fact that the common grantor had conveyed the fee to the shore front prior to the time of the making of said agreement. Lewis, P. J., Johnston, Adel and Nolan, JJ., concur; Hagarty, J., dissents in part, with the following memorandum: Interlaken Realty Company, hereinafter referred to as Interlaken, owner of a tract originally consisting of approximately 437 acres of land, including a large lake, on July 17, 1941, conveyed to defendant H. & B. Housing Corp., hereinafter referred to as H. & B., twelve lots designated by number. These lots were part of a proposed development known as Oakridge Gardens, which development was to consist, in all, of thirty-nine lots. This was the first of a series of conveyances of lots in Oakridge Gardens by Interlaken to H. & B., which lots, together with easements in favor thereof, were thereafter conveyed by the latter to individuals, some of whom are defendants. The deed impressed perpetual easements on retained property of Interlaken running in favor of these twelve lots, viz., (1) to use the waters of the lake which is shown on a described map which sets forth the tract of Interlaken and (2) for access to the lake over a parcel of land characterized as the " shore front." The shore front is a strip of land lying between a highway and a fraction of the frontage of the lake. The deed conditioned continuance of these easements on payment of an annual sum of money ranging from $150 for the first year to $600 for the fourth and subsequent years as sums " arbitrarily fixed as the cost of supervision and maintenance of the ' Lake ' in a safe and sanitary condition  *  *  *." The sums were payable " either to the grantor [Interlaken], or the successor owner of the fee of the ' Lake ' supplying such supervision and maintenance  *  *  *." These references to the lake are to the body of water in its entirety delineated on the described map and not merely to land under water adjacent to the shore front. Thereafter, and on October 28, 1941, Interlaken conveyed the shore front and adjacent land under water to plaintiff without reservation of any rights to

impress easements thereon. Despite this conveyance, Interlaken thereafter conveyed other lots in Oakridge Gardens to H. & B. by deeds purporting to grant the same shore front and lake easements. The home owners who purchased these lots have no easements of access across the shore front and, therefore, can have no redress in this proceeding to which Interlaken is not a party. It is the contention of plaintiff that even the owners of the twelve lots in favor of which easements on the shore front were impressed prior to the conveyance of the shore front by Interlaken to plaintiff are no longer entitled to enforce such easements because payments set forth in the deed above referred to have not been made. On October 24, 1942, Interlaken, by written agreement with owners of the lots in Oakridge Gardens, agreed to accept, in lieu of the fixed annual payments set forth in its deeds to H. & B., an annual sum of $10 from each of the lot owners and their successors in interest who had derived title from or through H. & B. Payments by lot owners were made in accordance with this agreement and plaintiff afforded them access over the shore front during the summer seasons of 1943 and 1944. When the 1945 season was in prospect the lot owners again tendered the annual $10 payments but Interlaken refused to accept them, with the statement that it "has no longer any interest in the matter of the rights to the lake". So, too, plaintiff refused to accept the annual payments which the lot owners thereupon tendered it. The majority of the court is of opinion that the easements across the shore front running in favor of the twelve lots have been extinguished because the agreement of October 24, 1942, was ineffectual in view of the fact that Interlaken had conveyed the fee to the shore front prior to the time of the making of this agreement. I disagree. The modification with respect to annual payments was not of the slightest concern to plaintiff as owner of the shore front. No part of these annual payments was to be devoted to maintenance of the shore front; they represented arbitrary fixation of cost of maintenance of the lake. Payments of the annual sums were to be made to Interlaken or successor owner of the fee of the lake supplying supervision and maintenance. There is nothing in the stipulated facts which would serve to show that Interlaken has parted with the fee to all of the lake. The condition is not to make payments to Interlaken until it has parted with the fee to the lake and then to the successor owner but rather to Interlaken or successor owner. Plaintiff owns no more than a fraction of the lake and does not claim to supervise and maintain it as an entity. So long as Interlaken is entitled to receive the annual payments, which in my opinion is as long as it is in existence, or at least so long as it owns and maintains some part of the lake, it can make whatever agreement it desires as to those payments and plaintiff, which took the shore front subject to the easements running in favor of the twelve lots, has no standing to assert to the contrary. I vote to direct judgment in favor of those defendants who are owners of lots 37, 41, 49, 54, 56, 65, 68, 69, 70, 72 and 73, and in favor of the owners and mortgagee of lot 53, declaring that each has a perpetual easement appurtenant to his respective lot for the purpose of giving access to and use of the lake shown on Exhibit 1, over the shore front of plaintiff as delineated on that exhibit. Settle order on notice within five days from the date of this decision.