Samuel W. Eager, J.
This is an action pursuant to article 15. of the Real Property Law seeking a determination that the defendants possess no right of way or easement in and over certain lands in the town of Mount Pleasant, Westchester County, which Stephen Holden (now deceased) purchased from the County of Westchester. The action was brought by Stephen Holden, but he died after the commencement thereof, and his executors were duly substituted as parties plaintiff. The action was tried before the undersigned without a jury.
The defendant, County of Westchester, interposed an answer alleging that the right of way or easement was a right of way or easement reserved by the Graham Syndicate, a predecessor in title of defendant, Palitz. The county agreed on the trial that it neither has nor claims to have any interest in the premises and that judgment herein may so provide.
The dispute between plaintiffs and defendant Palitz involves an easement in the nature of a right of way, allegedly reserved by the Graham Syndicate for access from a public street known as Marble Avenue to a tract of land owned by it at the time of the reservation.
The Graham Syndicate (hereinafter referred to as Graham) was a New York corporation organized in 1906 and in that year *435 acquired title to the so-called “ Graham Farm.” Early in 1910, ah additional acreage parcel situate north of the Graham Farm was also acquired by Graham. Thereby, it became the owner of a tract of over 200 acres of land in said town lying west of the Saw Mill River and extending northerly from what is now the Hawthorne Traffic Circle for a distance of a mile and a half. The only accesses from the property to local roads were at a point in Hawthorne at the extreme southerly end of the property and a right of way to Commerce Street, Thornwild, at a point near the center of the property. There was no access to any street along the entire northerly half of the property.
On July 25,1910 one Stephen L. Angell, an officer and director of Graham, acquired the title by deed of conveyance from one Alexander Douglas, of two lots each 25 feet by about 90 feet, known and designated as lots 9234 and 9235 in section E on map of Sherman Park, said Town of Mount Pleasant (which lots are hereinafter referred to as the “ subject lots ”). The said lots lay between the said tract of land owned by Graham and proposed local streets known as Marble and Rosalind Avenues. It is clear that these two lots were acquired by said Stephen L. Angell solely for the purpose of providing access to an improved street from the large parcel of Graham lying to the west of said proposed local streets. Angell was called as a witness and testified that he could not recall whether he used his own funds or funds of Graham in paying for the property. However, his dealings, after he acquired the lots, indicated that he acquired and held the same for the benefit of the lands of the corporation (Graham) of which he was an officer.
In 1924, Angell contacted the County of Westchester with respect to the sale to the County of Westchester of a strip of land along the easterly portion of the lands of Graham for the purpose of constructing the Saw Mill River Parkway from the Hawthorne Traffic Circle north to Pleasantville. Negotiations on behalf of Graham were conducted by the said Angell. On December 24, 1924 these negotiations resulted in a contract between Graham and the County of Westchester whereby Graham agreed to sell and convey to the County of Westchester several acres of land specifically including the subject lots which were acquired by Angell from Douglas. The legal title to these lots was, however, in Angell’s name and he was not individually a party to the contract. He, however, executed the contract in behalf of the corporation as secretary thereof.
The contract specifically provided that the premises covered thereby were to “ be conveyed, however, subject to the following conditions, and the deed shall provide that if said conditions *436 are in any way broken, the said property shall immediately revert to the grantor: * * * Second: That the grantor reserves to itself, its successors and assigns, five rights of way over and across said proposed parkway from the remaining lands of the grantor; * * * the second one shall be fifty (50) feet in width to Marble Avenue over the land owned by the grantor, known as lots 33 and 34, Block 80, Sheet 3, on the Assessment Maps of the Town of Mount Pleasant
The said lots 33 and 34 are the subject lots, it having been stipulated that they are the same lots described in the Douglas to Angell deed as lots 9234 and 9235, in section E of Sherman Park, and the right of way referred to as “ the second one ” is the right of way in dispute.
Certain deeds were executed and delivered to the County of Westchester to carry out the contract. There was the full covenant and warranty deed of Graham, dated April 28, 1925 (recorded April 28, 1925) executed in behalf of the corporation by one McCabe, as president, and attested by Angelí as secretary, which conveyed all of the property contracted to be conveyed except the subject lots held in the name of Angel. Notwithstanding said lots were not included in the property conveyed, the deed provided: ‘‘ The party of the first part reserves for itself, its successors and assigns, five (5) rights of way over and across said proposed Parkway to and from the remaining lands of the said party of the first part as follows; * * * the second to be fifty (50) feet in width to Marble Avenue over the land now owned by the party of the first part and known as lots 33 and 34, Block 80, Sheet 3 on the Assessment Maps of the Town of Mount Pleasant ”.
Also there were executed and delivered to the county two quitclaim deeds, bearing date of April 20,1925 (recorded May 1, 1925), one by Angell and his wife and one by the Graham Syndicate. Both deeds contained subject clauses — the Angell deed, “ Subject to any rights of the Graham Syndicate to use the premises hereby conveyed for purposes of right of way between other lands belonging to them and Marble Avenue.” The Graham Syndicate deed, “ Subject to a right of way from Marble Avenue, through other properties of the Graham Syndicate as reserved in deed from the Graham Syndicate to Westchester County for adjoining lands dated April 20, 1925.”
The entire consideration for all lands acquired by the County of Westchester was paid to Graham. No part of the consideration was paid to Angelí. The three deeds were in the nature of deeds poll, executed only by the respective grantors.
*437 Following the delivery of the deeds there were negotiations between Angell and the county looking toward the opening of a proposed road from the Graham property to Marble Avenue, with a consideration of laying the same out over the subject lots and also with a consideration of an alternative route for the same. Pending the negotiations, lands of Graham were conveyed to another corporation, Graham Hills, Inc., of which Angell was an incorporator, stockholder, director and the president. The lands, however, remained principally undeveloped and no road was ever laid out over the subject lots to Marble Avenue. The defendant Palitz now owns these lands, and has succeeded to the title, if any, of Graham in said right of way over the subject lots. The plaintiff executors claim to own said lots free of any right of way. It appears, that the County of Westchester, on January 30, 1946 executed and delivered to plaintiffs’ testator, Stephen Holden, a deed conveying said lots and other lots. Said deed was dated January 30, 1946 and recorded May 7,1952 and it expressly recites that it is “ Subject to * * * Right-of-way as contained in deed dated the 20th
day, of April, 1925, and recorded on the 1st day of May, 1925, in Liber 2567 of Deeds at page 190 (The deed referred to as recorded on May 1,1925, Liber 2567, p. 190, is the deed of Angell to the county.)
The lots in question were never used as a road or way to or from the Graham lands and, eventually, Marble Avenue was relocated. The lots are entirely unimproved, and the plaintiffs seek an adjudication that the defendant Palitz has no right of way or easement over the same. The action has been to the Appellate Division on an appeal from a summary judgment rendered in plaintiffs ’ favor. The judgment was granted on the theory that, by reason of the relocation of Marble Avenue, the necessity for the easement no longer existed and that, therefore, the easement had terminated. The Appellate Division reversed (see 1 A D 2d 685) stating, in effect, that there were issues that should be determined on a trial.
The Appellate Division, in its Per Curiam opinion said, among other things, that, “ Whether any easement was created at all would depend on the rights which Graham Syndicate had in respondent’s [plaintiff’s] property”. So the first question to be determined is: Did Graham acquire or have an easement of way? The defendant Palitz claims that Graham “ lawfully reserved an easement by grant in its conveyance to the County of Westchester.” Clearly, this contention is not sound. Graham did not have legal title to the lots at the time of its conveyance. Therefore, the reservation by it of an easement was *438 in and of itself ineffective to create a legal title to the alleged easement. A man having no title in the first instance to specific lands cannot, of course, convey any, and, not having any title to convey, cannot secure to himself an easement or other right in the lands by reserving the same. The general rule is “ that a man can neither grant or reserve the title to that which he hath not in himself to grant or to reserve.” (Hathaway v. Payne, 34 N. Y. 92, 108.) Clearly, to be operative as such, a reservation must issue out of the estate granted. (26 C. J. S., Deeds, § 139, p. 446; Hathaway v. Payne, supra; Case v. Haight, 3 Wend. 632.)
It is clear, however, that all of the instruments, that is, the contract with and the three deeds to the County of Westchester are to be read together, and all of the surrounding facts and circumstances are to be considered, in determining the intent of the parties and the effect of the transaction whereby the right of way was attempted to be reserved to Graham. By virtue of such instruments and the surrounding facts and circumstances, it is my opinion that Graham did become vested with a right of way over the subject lots for access to Marble Avenue from its lands. The easement was not acquired by express grant but by way of implied covenant or estoppel. (Case v. Haight, supra.) By virtue of deeds delivered as a part of the transaction in which the right of way was attempted to be reserved, the County of Westchester acquired title to the subject lots, and it had the right to and, in effect, did covenant and agree that Graham should have the right of way in question. The county and Angelí were estopped to deny title of Graham to the right of way. (Case v. Haight, supra; Hathaway v. Payne, supra.) The law will imply a grant to support the right of way, and it is clear, as a matter of fact, that Holden, as grantee of the county, took with notice of such a right of way appurtenant to the Graham lands. In any event, his deed from the county expressly recited that it was subject to the right of way and thus, he, too, is estopped from denying the existence of the easement. ‘‘ It has long been established in this State that a purchaser who accepts a deed which recognizes an easement over the realty is estopped by such acceptance from denying the existence of such easement. Bridger v. Pierson, 45 N. Y. 601; Wilson v. Ford, 209 N. Y. 186, 102 N. E. 614; Barber v. City of New Rochelle, Sup., 99 N. Y. S. 2d 393.” (Dagrosa v. Calabro, 105 N. Y. S. 2d 178, 181; see, also, Barber v. City of New Rochelle, 99 N. Y. S. 2d 393; White Cap Sea Foods v. Panzner, 2 Misc 2d 421.) The estoppel of a grantee, however, to deny the existence and validity of a previously created ease *439 ment to which he expressly takes subject should not and does not add to the breadth or depth of the easement. He is merely to be held to have recognized it for what it is worth.
Now, the final question to be resolved in this case is whether or not this particular easement of way has terminated or become extinguished. It is clear that the nature, extent and duration of an easement, such as this one, created by way of implied covenant or estoppel depends upon the intention of the parties and what was in fact affirmed and agreed upon by them. The same is to be ascertained by a consideration of the words used and the surrounding facts and circumstances, that is, as of the time of the original transaction, and the easement is to be limited accordingly.
It clearly appears that the particular easement here was created solely as a right of way over the subject lots, 50 feet in width, from the lands of Graham to Marble Avenue. The easement was for the benefit of the Graham lands, to be vested in the owner of such lands solely as a right of way therefrom. Such was the purpose of the easement as is clearly indicated by the intention of the parties and as affirmed by their words and the surrounding circumstances. It now, however, conclusively appears as a matter of fact that never again can there be a use of the subject lots for a right of way as intended. Marble Avenue has been relocated, graded and improved, and the former location abandoned. The planned public highway, to which the proposed right of way was to connect, no longer exists. The new location of Marble Avenue is nearer to the Graham lands with the result that the subject lots are now situate partly in the bed of and partly to the east of the established Marble Avenue and the Graham lands are situate to the west of Marble Avenue. Thus, such portion of the subject lots as are not located in the bed of Marble Avenue are situate across the road from the Graham lands and, thus, they may not be used as a connecting link from the Graham lands to Marble Avenue. Furthermore, there is now provided a good hard-surfaced road within 300 feet of the subject lots providing good access for the Graham lands and leading into Marble Avenue as now established.
I conclude, therefore, that this easement created solely for access purposes from the Graham lands to the public highway is extinguished. The easement, being coextensive merely with the intent of the original parties and the facts affirmed in their transactions, has expired and is at an end. It is extinguished because all purpose for its existence has ended. (Cf. Clarke v. Keating, 183 App. Div. 212, referred to in Memorandum in this case by Appellate Division on the appeal from the summary *440 judgment herein, 1 A D 2d 685.) To continue the easement under the circumstances would not be in accord with the implied grant.
This will stand as the decision herein without formal findings. Judgment for plaintiff to be settled on notice. No costs.