[Civ. No. 5821.   Fourth Dist.   July 2, 1958.]

CARL A. PETERSEN et al., Appellants, v. CLOVERDALE EGG FARMS (a Corporation) et al., Defendants; ORVIL CESSNA et al., Respondents.

Robert H. Lund and Floyd H. King for Appellants.

Clinton F. Jones for Respondents.

McCABE, J. pro tem.*—This is an appeal by plaintiffs from a judgment entered in favor of certain individual defendants. No appeal is taken from the judgment entered in favor of plaintiffs against the defendant Cloverdale Egg Farms, Inc., a corporation.

In the spring of 1955 defendants Cessna and Lena Church became partners with plaintiffs under the name "Cloverdale Egg Farms." The partnership had an active business and substantial assets. In September, 1955, plaintiffs and defendant Church, as incorporators, obtained articles of incorporation for Cloverdale Egg Farms, Inc. In November, 1955, a meeting was held at which plaintiff Carl Petersen

*Assigned by Chairman of Judicial Council.

was elected President, defendant Church was elected Vice-President, and plaintiff Marjorie Petersen was elected Secretary-Treasurer. Each acted in these respective capacities until May 8, 1956. No assets were ever formally transferred from the partnership to Cloverdale Egg Farms, Inc., except one vehicle. From November, 1955, to May 8, 1956, plaintiffs and defendants Church and Cessna carried on the business as a corporation under the name Cloverdale Egg Farms, Inc. Although at the November, 1955, meeting plaintiff Carl Petersen was authorized to apply for a permit to issue stock, no such application was ever prepared or filed.

In the spring of 1956, and before May 8, 1956, Carl Petersen verified, as president, a complaint wherein the corporation brought an action at law against a creditor of the corporation. During the period from November, 1955, to May 8, 1956, billings were sent to creditors, using the corporate title, notes were signed at the bank by plaintiffs as president and secretary of the corporation, and all business done by Cloverdale was done under the corporate name.

On May 8, 1956, an agreement was signed by plaintiffs and defendant Church wherein it is recited that defendant Church was purchasing all of plaintiffs' "right, title and interest in and to the business known as Cloverdale Egg Farms, including their interest, if any, in its capital assets, current contracts, accounts receivable, cash on hand and capital stock heretofore and hereafter issued by said business. It is mutually understood that this transfer of the Cloverdale Egg Farms is intended to encompass said business in all of its possible entities, including a sole proprietorship, a partnership, a joint venture and a corporation . . . ." Further, the agreement provided for plaintiffs' resignations as directors and officers, and defendant Church assumed and agreed to pay all debts and liabilities, and to hold plaintiffs harmless from any and all claims. The agreement provided defendant Church "agrees on behalf of the corporation to purchase from" plaintiffs "for a period of twelve months from date, not less than 500 nor more than 550 cases of eggs per week, subject to the following terms and conditions . . ." As to this latter provision, the record reflects that from at least early in 1955 to August, 1956, plaintiffs had a different and separate egg business which they conducted under the name of Palomar Egg Farms. Using this name they sold eggs to Cloverdale during that period.

Plaintiff Carl Petersen testified that from May 8, 1956, to

the latter part of July, 1956, other than new parties coming into the business, he knew of no other change of "capacity" in the Cloverdale business.

From the spring of 1955 to May 8, 1956, defendant Cessna conducted an egg business of his own, but this did not interfere with his being present at meetings of Cloverdale, being elected a director of defendant corporation, conducting business on behalf of the Cloverdale business, being present at least twice a week at the Cloverdale plant, giving instructions and advice on behalf of defendant corporation, seeking legal advice from the attorney for Cloverdale, having access to and receiving business records of Cloverdale, knowing the details of the business, and representing to plaintiffs that defendant Stokes was purchasing an interest in the business. There is no record as to how, if at all, defendant Cessna's interest in the partnership created any interest for him in the corporation. It is clear that immediately after the May 8, 1956, agreement was executed he and defendant Church took charge of and ran the business. Factually, he was present on May 8, 1956, when the agreement was signed and was instrumental in having the agreement signed on that day, and had physical possession of the cashier's check which went to pay plaintiffs for their interest. After May 8, 1956, the name "Riteway Cloverdale Egg Farms" was used in addition to Cloverdale Egg Farms, Inc.

In the spring of 1956, defendant Stokes, a friend of defendant Cessna, engaged in some transactions which concerned the Cloverdale business. It was his money, by way of a cashier's check, which was used in purchasing plaintiffs' interest. Defendant Stokes contends he loaned the money to the Cloverdale Egg Farms, Inc., but plaintiffs contend he purchased an interest in the business. The trial court found defendant Stokes was a creditor only.

During the period of May 8, 1956, to the latter part of July, 1956, plaintiffs delivered eggs to the Cloverdale plant, billed the corporation, and received several checks drawn on the corporate check form. In the latter part of July, 1956, not only did plaintiffs cease to do further business with Cloverdale but all business of Cloverdale "stopped." After May 8, 1956, defendants Cessna and Church had control of the assets. From the record it cannot be ascertained what became of the assets except that as of the latter part of July, 1956, the business closed and, as defendant Cessna testified, "all

of the assets are gone." The record is silent as to how the income or any other asset was used, or disbursed or distributed, except that a relatively small portion went to pay off bank loans, and plaintiffs received a few payments for eggs delivered.

Plaintiffs' complaint sets forth two causes of action, both of which were common counts to recover for the balance due from the defendant corporation and the individual defendants for eggs delivered during the period from May 8, 1956, to the latter part of July, 1956. In the title of the complaint plaintiffs named as defendants Cloverdale Egg Farms, Inc., a California corporation, Cloverdale Egg Farms, a copartnership, and Cessna, Church and Stokes. The case was tried upon the theory that all these defendants were before the court.

Among other facts, the trial court found "After the Petersens sold the business to Church, as evidenced by the written contract (Exhibit 2), Petersen continued to do business with the concern as a corporation," and under the heading "Conclusions of Law" the following appears:

"I

"The Cloverdale Egg Farms, a Corporation was not the alter ego of the defendants, or any of them.

"II

"The plaintiffs are estopped from taking advantage of the failure of the corporation to obtain a permit from the State Corporation Commissioner of California to issue shares of stock in the corporation.

"III

"The defendant Stokes was only a creditor of the corporation and had no other interest therein."

The trial court entered a judgment against the defendant corporation for the sum of $18,143.72, and in favor of the individual defendants.

As previously stated, the trial court had to decide this case upon a complaint setting forth common counts and the issues as created by the denials in the answers. There were no allegations in the complaint except those commonly found in common counts. There were no allegations of facts and plaintiffs were content to proceed under their chosen theory. Plaintiffs contend the trial court should have made additional findings and that there can be no estoppel found unless affirmatively pleaded.

It is a firm principle that the courts are not bound by the title given to a complaint. If the pleadings set forth a cause of action different from that indicated by the title the defect does not make invalid or affect the pleadings. (*Shimmon* v. *Moore,* 104 Cal.App.2d 554, 556 [232 P.2d 22].)

We think this same principle should apply as between findings of fact and conclusions of law. If there is a finding of fact set forth under a heading ''Conclusion of Law,'' the finding should be considered as one of the findings of fact. Therefore, in the instant case, we will consider such findings as are contained under the title ''Conclusions of Law'' as valid and effectual findings, as though they had been placed under the title of ''Findings of Fact.''

The trial judge found, in effect, that there was a contract between plaintiffs and defendant corporation, and that plaintiffs are estopped to deny the existence of the defendant corporation.

There is substantial evidence upon which to base the finding that plaintiffs' transactions between May 8, 1956, and the latter part of July, 1956, were with defendant corporation and not with defendants, as individuals. This being true, we will not disturb the finding on appeal. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Berniker* v. *Berniker,* 30 Cal. 2d 439 [182 P.2d 557].)

Plaintiffs contend that the law as contained in the cases of *Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792 [306 P.2d 1], and *Geisenhoff* v. *Mabrey,* 58 Cal.App.2d 481 [137 P.2d 36] is controlling in the instant case. We cannot agree to this position. In the two cited cases the trial court, upon the evidence before it, made a finding that the corporate entity could be set aside and judgment obtained against the individual defendants. A review of these cases indicates that the appellate court decided that there was substantial evidence to sustain the finding. In the instant case, the trial court has made certain findings which are set forth herein, and we determine that there is substantial evidence to sustain the finding of the trial court. It is the duty of the appellate court to sustain the finding of the trial court when there is substantial evidence supporting such finding. (*Estate of Bristol, supra; Berniker* v. *Berniker, supra.*)

The finding of estoppel and that the defendant corporation is not the *alter ego* of the individual defendants is proper. The evidence is that prior to May 8, 1956, plaintiffs conducted the business as a corporation, and after May 8,

1956, plaintiffs continued to do business with Cloverdale as a corporation, billed the egg deliveries to the corporation, received and cashed checks from the corporation, and did not know of any change of "capacity." They did not know, or at least they did not testify they knew, of the activities of the individual defendants after May 8, 1956, in using a different name or partnership name, or in what form they were conducting business. They transacted the business with Cloverdale as though only a corporation was involved. Later, and after about August 1, 1956, they made certain discoveries of the activities of defendants. After this, plaintiffs brought this action against "Cloverdale Egg Farms, a California Corporation" and other defendants. They did not allege that Cloverdale Egg Farms, Inc., was the *alter ego* of the individual defendants, nor did they allege facts upon which such a finding could be based. During the trial, evidence was offered on which the claimed estoppel is based. No objection to this evidence was interposed by plaintiffs.

In *Wynn* v. *Treasure Co.*, 146 Cal.App.2d 69, 75-76 [303 P.2d 1067], the court said:

"While defendants did not plead an estoppel, evidence on which the claimed estoppel is based was admitted without objection, the issue was fully litigated, and any objection that defendants did not plead the estoppel was waived. (*Pacific Finance Corp.* v. *Foust*, 44 Cal.2d 853, 858 [285 P.2d 632].) . . .

"It is a well settled general rule that a person who has acted as director, officer, or agent of an association purporting to be a corporation is estopped to deny its corporate existence both as against the alleged corporation itself and its members and stockholders. (18 C.J.S. 512, § 110(4).) 'It is a well-established general rule that one who deals with an apparent corporation as such and in such manner as to recognize its corporate existence de jure or de facto is thereby estopped to deny the fact thus admitted. The estoppel extends as well to the privies as to the parties to such transactions. The general rule is applied in actions brought by either of the contracting parties against the other and in actions by the person dealing with the corporation, wherein the existence of the corporation is assailed for the purpose of establishing individual partnership liability on the part of its members.' (13 Am.Jur. 207, § 63.) Fletcher says: 'A person who has acted as an officer of a pretended corporation, either as director or as president, or in any other capacity, and has thus

participated in holding out the corporation as having a legal existence, is estopped to deny such existence.' (8 Fletcher Cyclopedia Corporations (Permanent Ed.) 280, § 3940.) 'An estoppel to deny corporate existence may arise from an express or implied admission of the fact in an action or proceeding brought by or against an alleged corporation. One who sues an alleged corporation as such thereby necessarily admits that it is a corporation, and is estopped to deny its corporate existence either in that action, or in a subsequent action against the members or corporators on the same liability based upon the ground that the corporation was not legally organized.' (18 C.J.S. 519, § 113.)''

The issues as framed by the pleadings and the theory upon which the case was tried limited the findings of fact to be found by the trial court. Not only are all of the findings proper, but they are substantiated by the evidence. There was no necessity to make additional findings.

Judgment affirmed.

Mussell, Acting P. J., and Griffin, J., concurred.

A petition for a rehearing was denied July 23, 1958, and appellants' petition for a hearing by the Supreme Court was denied August 28, 1958.