[Civ. No. 6756. Fourth Dist. June 11, 1962.]

CITY OF NATIONAL CITY, Plaintiff and Respondent, v. CALIFORNIA WATER AND TELEPHONE COMPANY, Defendant and Appellant.

Higgs, Fletcher & Mack, DeWitt A. Higgs, Edward M. Wright and Dan E. Hedin for Defendant and Appellant.

Robert O. Curran, City Attorney, Curran, Golden, Mc-Devitt & Martin, O'Neill P. Martin, Carstens & Todd, and William O. Ward III for Plaintiff and Respondent.

COUGHLIN, J.—The City of National City, plaintiff and respondent herein, ordered the improvement of one of its streets, i.e., Highland Avenue between Fourth and Eighth Streets, which necessitated the relocation of the water distribution facilities therein owned by the California Water and Telephone Company, the defendant and appellant herein. The relocation was effected under an agreement which, in substance, provided that the cost thereof should be borne as determined by a court of competent jurisdiction. Thereupon the plaintiff brought this action to obtain such determination. The defendant answered; asserted several affirmative defenses; and filed a cross-complaint which requested a determination that the city be required to pay the relocation costs in question.

The case was submitted for decision upon a stipulation of facts, a number of exhibits admitted into evidence, and the testimony of one witness which is not material to a determination of the issues on appeal. Thus, except for reasonably deducible conflicting inferences, the evidence is without dispute. The hereinafter stated facts appear from the record without contradiction.

In 1868 a man named Pioche owned a tract of land known as the Rancho de la Nacion, which included the area now within National City; on June 18 of that year contracted to sell it to people named Kimball; in his contract agreed that the buyers might sell parts of the tract at specified prices; and three years later, i.e., on July 8, 1871, executed a deed transferring title to the Kimballs which used the same description as that in the contract but added this provision: "Excepting out of and from the tract of land above described such portions thereof as may have been conveyed since said Eighteenth day of June 1868 under the terms of said agreement to sundry parties by the said Francois L. A. Pioche, together with said Frank A. Kimball and Warren C. Kimball as grantors."

In the meantime, i.e., on June 9, 1869, the Kimballs, as party of the first part, and Kimball Brothers Water Company, a corporation, as party of the second part, had executed an "Indenture" by the terms of which first party granted to second party all of the water in Sweetwater River, a stream

flowing across the Rancho de la Nacion; "all other streams owned by the parties of the first part" in said County of San Diego; and the right "to conduct the same, over, along and accross [sic] any of the lands of the parties of the first part in said County by means of flumes, canals or aqueducts"; together with the right of ingress and egress "for the amending, cleansing and repairing the same, with liberty and privilege for that purpose to dig and take stones and earth from the adjacent land of the parties of the first part, when and as often as need be, or occasion requires."

On August 27, 1881, all of the assets of Kimball Brothers Water Company were acquired by the San Diego Land and Town Company, a corporation.

On September 20, 1886, which was 15 years after the deed from Pioche to the Kimballs, a map was filed in the office of the County Recorder of San Diego County entitled "Frank A. Kimball's Subdivision" of a portion of the Rancho de la Nacion, upon which appeared a number of streets, one of which was designated Highland Avenue.

On January 18, 1888, the Board of Trustees of the City of National City granted a franchise for the laying of railroad tracks in certain designated streets in the city, among which was Highland Avenue between Second and Eighth Streets.

On March 1, 1888, the same board of trustees, by ordinance No. 27, granted a franchise to the San Diego Land and Town Company, "to lay and maintain water pipes in and upon any or all of the streets of National City, for the purpose of supplying water to the said City and the inhabitants thereof . . . and to charge and collect therefor such fees or rates as may be established by the Board of Trustees or Common Council of said City."

Shortly thereafter, i.e., on April 1, 1888, as stated in a stipulation between the parties, the San Diego Land and Town Company "installed a water main *in the way* now described as Highland Avenue between Fourth and Eighth Streets, and has continually since the 1st of April, 1888 used that water main in its public utility operation." (Italics ours.)

The defendant, by *mesne* conveyances, has acquired the assets of the San Diego Land and Town Company; alleges in its cross-complaint that it is the owner of "an easement for water facilities" in the land "now commonly described as Highland Avenue, between 4th and 8th Streets," in National City, under which "water meters, fire hydrants, and other

facilities were installed" by it; and through these facilities served the occupants of property abutting Highland Avenue.

In June 1959, the plaintiff let a contract for the improvement of Highland Avenue which required a relocation of the aforesaid facilities. A dispute arose as to whether the plaintiff or the defendant should bear the expenses of this relocation. The plaintiff claimed that the defendant's facilities were installed and maintained by authority of the aforementioned franchise, which carried an implied obligation on its part to pay the cost of any relocation necessitated by proper governmental use, citing *Southern Cal. Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713 [329 P.2d 289], in support of its position. The defendant claimed that its facilities were installed pursuant to the Kimball easement, at a time before the "way" in question became a city street, and that any infringement upon this right, by requiring it to bear the expenses of a relocation, would constitute the taking of its property without just compensation.

The trial court decided in favor of the plaintiff; by memorandum opinion, in substance, indicated its belief that the defendant had installed its facilities pursuant to the subject franchise, and that it thereby impliedly obligated itself to pay the cost of relocation, even though it may have had a right to lay a pipeline along the land in question; refused to make a finding respecting the date when Highland Avenue became a street, although requested to do so by the defendant; and entered judgment accordingly.

The defendant appeals, contending that under the Kimball easement its predecessor was authorized to install water facilities on the land now known as Highland Avenue if at the time of installation this land was not part of a city street; that the record is devoid of any finding as to when Highland Avenue became a street; that, because of its request for such a finding, this court may not imply a finding thereon favorable to the judgment; that this court must accept as a fact that Highland Avenue was not a street at the time of the subject installation; that, under the circumstances, the city's franchise conferred only the right to serve water to the inhabitants of National City and not the right to lay pipes in the city streets, which latter right already was in being under the Kimball easement; that to force it to pay for the relocation of its water facilities constitutes a taking of its property without just compensation; and that the judgment should be reversed.

The defendant also requested the trial court to "specifically find" concerning its rights under the Kimball indenture. This request was denied.

The defendant's request for special findings and its contentions respecting the inadequacy of the findings as made are based on the provisions of section 634 of the Code of Civil Procedure.

At this juncture it is appropriate to consider certain rules of law pertaining to the sufficiency of findings and the need therefor under the evidence. ██ As a general rule "a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made." (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Beksinski* v. *Beksinski*, 151 Cal.App.2d 674, 676 [312 P.2d 268].) ██ However, this rule does not apply if the appealing party made a request for a specific finding upon the issue in controversy. In the latter event, by virtue of the provisions of section 634 of the Code of Civil Procedure, the court, on appeal, may not infer that the trial court found in favor of the prevailing party on the issue. ██ On the other hand, it is not the purport of the code section under consideration that in the event a request for a specific finding is made and denied, the court on appeal must infer a finding unfavorable to the prevailing party. Where such a request has been made and denied the judgment must stand or fall on the finding expressly made unless the evidence on the issue in controversy is undisputed, is of such a nature that it reasonably cannot be disbelieved, and no conflicting inferences can be drawn therefrom. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Southern Cal. Collection Co.* v. *Napkie*, 106 Cal.App.2d 565, 569 [235 P.2d 434].) ██ In the latter event the issue properly is one of law and not of fact; no finding need be made thereon; and when made is not binding on the reviewing court. (*San Diego T. & S. Bank* v. *County of San Diego*, 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416]; *Leis* v. *City & County of San Francisco*, 213 Cal. 256, 258 [2 P.2d 26]; *Thomas* v. *J. C. Penney Co.*, 186 Cal.App.2d 223, 226 [8 Cal. Rptr. 721]; *Emsco Pavement etc. Corp.* v. *City of Los Angeles*, 176 Cal.App.2d 760, 766 [1 Cal.Rptr. 814]; *County of Los Angeles* v. *Wright*, 107 Cal.App.2d 235, 241 [236 P.2d 892].)

"Furthermore, when there is no conflict in the evidence an appellate court is not bound by the trial court's construction of an instrument based solely upon its terms unaided by extrinsic evidence. [Citations.]" (*County of Los Angeles* v. *Wright, supra,* 107 Cal.App.2d 235, 241.)

Collaterally applicable rules are: (1) "Where no evidence is introduced upon an issue, a finding thereon should be against the party who has the burden of proof" (*Sullivan* v. *Kantel,* 124 Cal.App.2d 723, 725 [269 P.2d 175]);

And (2) ". . . the burden of proof lies on the party who would be defeated if no evidence were given on either side." (Code Civ. Proc., § 1981.)

In the instant case, even assuming the land now occupied by Highland Avenue, between Fourth and Eighth Streets, had not become a street in 1888, the evidence presented to the trial court was not sufficient to support a finding that the defendant's use thereof was authorized by the Kimball easement. Four cogent reasons dictate this conclusion.

In the first place, the Kimball indenture described the subject easement as the right to conduct specifically designated water "over, along and across any of the lands of the parties of the first part," i.e., of the Kimballs. The evidence establishes without dispute that at the time this indenture was executed the Kimballs did not own the land which eventually became Highland Avenue; that a person named Pioche was the owner thereof; that the Kimballs were the buyers under a contract to purchase the same; and that they did not obtain title thereto until 1871, which was three years after execution of the subject indenture. With respect to this issue, both parties confusingly consider the doctrines of estoppel by deed and after-acquired title. However, these doctrines are inapplicable thereto. The Kimballs did not grant an easement over specifically described land which they thereafter acquired. If this had been so a consideration of the doctrines in question would have been pertinent. The issue at hand is one of description. The servient tenement of the subject easement, by virtue of the description used, was limited to lands owned by the grantees at the time the indenture was executed.

"No principle of law is more well established than that nothing passes by deed except what is described in the grant." (*Joerger* v. *Pacific Gas & Electric Co.,* 207 Cal. 8, 32 [276 P. 1017]; see *Von Meding* v. *Strahl,* 319 Mich. 598 [30 N.W.2d

363, 368]; *Fred F. French Investing Co. v. Jetter*, 270 App. Div. 1048 [63 N.Y.S.2d 105].)

Furthermore, it is expressly declared in section 804 of the Civil Code that: ''A servitude can be created only by one who has a vested estate in the servient tenement.'' (See also *Holden v. Palitz*, 2 Misc.2d 433 [154 N.Y.S.2d 302].)

In the second place, there is no showing that the Kimballs at any time owned the land upon which the subject easement allegedly was located. The deed from Pioche to them, upon which the defendant relies to establish their title to the strip of land now known as Highland Avenue, conveyed the tract of land known as the Rancho de la Nacion, but excepted therefrom such portions thereof as may have been conveyed ''to sundry parties by the said Francois L. A. Pioche, together with said Frank A. Kimball and Warren C. Kimball as grantors.'' The evidence does not supplement the foregoing description of the property excepted from the subject deed; whether the land now within the boundaries of Highland Avenue was a part of that conveyed or a part of that excepted from the conveyance does not appear; and, therefore, any finding on the issue would have to be adverse to the defendant's position. ■ Under the authorities heretofore cited, an attempt to convey an easement over property not owned by the grantor would be a nullity. Any contrary conclusion based on the finding of the trial court that the deed in question conferred a right to conduct water ''along and across any of the lands which constitute a part of the City of National City'' must be rejected because it is not supported by the evidence and, under the rule heretofore stated, is not binding upon this court.

In the third place, the easement claimed by the defendant does not conform to the use authorized by the easement allegedly conveyed by the Kimball grant. The defendant's predecessor in interest, by the terms of that grant, was limited to the right to conduct water ''by means of flumes, canals or aqueducts.'' The claimed easement, as described in the defendant's cross-complaint, was ''an easement for water facilities'' under which ''water meters, fire hydrants and other facilities were installed.'' Even though it be assumed that the right to conduct water by ''aqueducts,'' which was conferred by the Kimball grant, included the right to conduct

water by pipelines,[1] it did not include the right to install and maintain water meters, fire hydrants and appurtenances. The use of an easement "must be confined strictly to the purposes for which it was granted." (*Kerr* v. *Brede*, 180 Cal. App.2d 149, 151 [4 Cal.Rptr. 443].) It has been held that an easement permitting the conveyance of water by ditch did not authorize a conveyance by pipeline. (*Oliver* v. *Agasse*, 132 Cal. 297, 299 [64 P. 401]; *Allen* v. *San Jose Land & W. Co.*, 92 Cal. 138, 142 [28 P. 215, 15 L.R.A. 93].) The distribution system now maintained by the defendant is without the scope of the easement described in the Kimball grant.

In the fourth place, the evidence does not show that the water being conducted in the subject pipelines is water from the Sweetwater River or other streams owned by the Kimballs when the easement was ganted. The easement in question is confined to conducting water from the aforesaid sources. In the same vein, the evidence does not show that in 1888, when the defendant's predecessor installed a water main on the "way" known as Highland Avenue, the purpose or use thereof was to conduct water from those sources.

The trial court based its decision upon another theory, concluding that the defendant's predecessor in interest was given a franchise to furnish water to the inhabitants of National City; that it accepted this franchise; and that even though it may have had an easement to conduct water through a pipeline along lands which now are a part of Highland Avenue, its acceptance of this franchise carried with it an implied obligation to conform its distribution system to any governmental use of the streets in which such system might be located. The rule of law relied upon in support of this conclusion is that expressed in *Southern Cal. Gas Co.* v. *City of Los Angeles, supra,* 50 Cal.2d 713, 716, where the court said: "[I]t has generally been held that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the

---

[1]The plaintiff contends that pipelines are not included within the term "aqueducts" as used in the instant indenture. The defendant contends to the contrary and cites *Smouse* v. *Kansas City Southern Ry. Co.*, 129 Kan. 176 [282 P. 183], *Hutchins* v. *Cleveland*, 17 Ohio Dec. 356, and *Owen* v. *Field*, 102 Mass. 90, in support of its position. The court made no finding upon this issue and we withhold making any determination thereon as a matter of law.

streets." (In accord: *Los Angeles County Flood Control Dist.* v. *Southern Cal. Edison Co.,* 51 Cal.2d 331, 334 [333 P.2d 1].)

The defendant contends that the rule of law thus relied upon does not apply to the factual situation at hand; that the franchise accepted by its predecessor conferred only the right to serve the people of National City with water and did not confer the right to use the land now occupied by Highland Avenue, because it already had that right.

The defendant supplements this position with the additional and meritorious contention that as the court refused its request to make a finding on the issue whether Highland Avenue was a street at the time its predecessor installed a water main therein, this court may not assume in support of the judgment that the area in question was a street when the initial installation was made. (Code Civ. Proc., § 634.) On the other hand, there is no doubt that Highland Avenue is now and for many years has been a public street in the City of National City, even though the court refused to make a finding as to the date when it became such.

The defendant's main premise is based on the claim that the state Constitution, as it existed in 1888, and the statutes supplementing the same, concerned two franchises; one was a franchise to serve water to the inhabitants of the city and collect compensation therefor (Cal. Const., art. XIV, § 2; Civ. Code, § 548), while the other was a franchise to use the streets of the city for such purposes. (Cal. Const., art. XI, § 19.) Accepting this premise as legally supported, the defendant contends that, as there is no finding that the way now known as Highland Avenue was a street at the time of the water main installation in 1888, its predecessor had a right to use the land included therein under the Kimball easement; that the location of this easement became fixed by the installation made (*Youngstown Steel etc. Co.* v. *City of Los Angeles,* 38 Cal.2d 407, 410 [240 P.2d 977]); that its right in the premises was not derived from the subject franchise, which was limited to a right to serve water to the city's inhabitants; that the location of its easement, which includes the position of its pipes in the ground, was not subject to change without compensation (*Panhandle Eastern Pipeline Co.* v. *State Highway Commission of Kansas,* 294 U.S. 613, 618 [55 S.Ct. 563, 79 L.Ed. 1090]; *Youngstown Steel etc. Co.* v. *City of Los Angeles, supra,* 38 Cal.2d 407, 410; *Buckeye Pipe Line Co.* v. *Keating,* 229 F.2d 795); and that the implied

obligation of the holder of a franchise to use a city's streets, to bear the expense of a change in the location of its facilities made necessary by a proper governmental use, does not apply.

In opposition to the defendant's contention that the theory of the trial court was in error, two factors must be considered. The first is the finding, in substance, that the defendant's predecessor installed, added to and maintained its distribution system in reliance upon the franchise given it and not upon its easement rights.[2] The second factor is that the use of Highland Avenue by the defendant's present distribution system is not the use authorized by the Kimball easement.

It is obvious that the trial court interpreted Ordinance 27 as conferring authority to do a unified act, i.e., the delivery of water to the inhabitants of National City through a distribution system placed in the city streets. It was entitled to infer that the defendant's predecessor, in constructing a water main in the "way" now known as Highland Avenue, as well as in adding thereto and supplying water to the inhabitants of the city, acted pursuant to the authority conferred upon it by the franchise originating in Ordinance 27 and the former provisions of Article XI, section 19 of the state Constitution, rather than that conferred by its easement right. The fact that there is no finding that the "way" in question was a street at the time of such installation is not controlling; it did become a street; the rights conferred by the franchise were exercised while it was a street; and the relocation now required is made necessary because it is a street.

Furthermore, the franchise in question conferred rights in the use of Highland Avenue which were in addition to those conferred by the Kimball deed, i.e., the right to add to the water main; to install meters, fire hydrants and appurtenances; and to use the same for the purpose of conducting water obtained from sources other than those described in the

[2]Paragraph I under the subtitle "Conclusions of Law" in the instrument entitled "Findings of Fact and Conclusions of Law" that "the granting and acceptance of the franchise pursuant to the provisions of National City Ordinance No. 27 imposes the burden on defendant as the successor in interest of San Diego Land and Town Company to relocate at its own cost and expense said facilities" combines a finding of fact and conclusion of law which, when interpreted by the memorandum opinion filed by the trial judge, includes the finding in substance as stated. A finding of fact does not lose its efficacy because it is included among stated conclusions of law. (*Linberg* v. *Stanto,* 211 Cal. 711, 776 [297 P. 9, 75 A.L.R. 555]; *Petersen* v. *Cloverdale Egg Farms,* 161 Cal.App.2d 792, 797 [327 P.2d 127].)

Kimball deed. The acceptance of these rights by the installation or maintenance of a distribution system in the city streets carried an implied agreement to relocate the same at the owner's expense when necessary to accommodate proper governmental uses. (*Los Angeles County Flood Control Dist.* v. *Southern Cal. Edison Co., supra,* 51 Cal.2d 331, 334; *Southern Cal. Gas Co.* v. *City of Los Angeles, supra,* 50 Cal.2d 713, 716.) The principle applied by the trial court was expressed in a case between the plaintiff city and the defendant's predecessor in interest, i.e., *San Diego Land & Town Co.* v. *City of National City,* 74 F. 79, 81, where it was said:

"In the present case the complainant came into the State of California, and acquired the water and water rights which form the basis of its suit under and by virtue of laws passed pursuant to that provision of the constitution of the state which it now seeks to assail as being contrary to the provisions of the constitution of the United States. To permit the complainant to do this would, in effect, be to permit it to rely upon the constitution and laws of California as a valid basis for the acquisition of its asserted rights, and at the same time to treat as void the same provisions, where they impose a burden in connection with those rights. The complainant cannot be permitted to thus blow hot and cold in the same breath. If it was not willing to subject itself to the burden imposed by the constitution and laws of California upon all persons and corporations appropriating water in the state for distribution and sale, it should not have come, as it did, into the state, and availed itself of the rights of appropriation conferred by the same constitution and laws. Taking those benefits, it assumed the corresponding burden, and will not be heard to assert the one and repudiate the other."

The defendant may not say that it and its predecessors in interest did not accept the benefits of the subject franchises because at the time of the initial installation in the subject area Highland Avenue was not a street. There is no showing that their total action in the premises was not taken in reliance upon the franchise conferred upon them by law. A contrary inference is reasonably deducible from the evidence which shows that no action was taken to use the "way" now known as Highland Avenue for the purpose of conducting water along the same until the franchise issued by the city had been granted; the initial use thereof occurred shortly thereafter; and subsequently its use was extended beyond

that authorized by the Kimball easement. When the offered franchise rights were accepted either by the defendant or its predecessors a valid contract came into being (*County of Los Angeles* v. *Southern Cal. Tel. Co.*, 32 Cal.2d 378, 386 [196 P.2d 773]) which, as heretofore noted, included an implied promise by the recipient of these rights to bear the expense of any relocation of the distribution system installed or maintained in reliance thereupon which was made necessary by proper governmental use. (*Southern Cal. Gas Co.* v. *City of Los Angeles, supra,* 50 Cal.2d 713, 716.)

The foregoing conclusions dictate an affirmance of the judgment and, therefore, other contentions raised by the parties need not be considered. Included in the latter is the defendant's objection to a consideration by this court of exhibits attached to appellant's brief. The subject matter of these exhibits is not a basis for our determination and, for this reason, it is not necessary to consider the merits of this objection.

The judgment is affirmed.

Shepard, Acting P. J., concurred.

A petition for a rehearing was denied July 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1962.